**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

LIANE TRUELL,

        **Plaintiff,**

      **v.**                                       **CIVIL ACTION NO. 2:04cv716**

REGENT UNIVERSITY SCHOOL OF LAW

        **Defendant.**

### *MEMORANDUM OPINION & ORDER*

Before the Court is the Motion of Regent University Law School ("Defendant") for

Summary Judgment and, pursuant to Rule 37(b) of the Federal Rules of Civil Procedure, a

Motion for Sanctions.  Defendant contends that there exists no genuine issue of material facts

with respect to the issues set for trial.  Further, Defendant asserts that Plaintiff's refusal to

respond to discovery requests disregards both discovery rules and Court Orders, thus dismissal of

the case is proper.  The Court has considered the memoranda of the parties and these matters are

now ripe for decision.  The Court finds both motions provide meritorious grounds to dismiss the

action.[1]  For the reasons state herein, Defendant's Motion for Sanctions is **GRANTED**, and the

action is **DISMISSED** with prejudice.

### I.  FACTS AND PROCEDURAL HISTORY

Liane Truell ("Plaintiff") is currently a resident of Georgia.  Regent University Law

School is located in Virginia Beach, Virginia.  Defendant maintains a Law School Policies and

---

[1]  Although the Court is ruling only on the Motion for Sanctions, even if the Court did not
grant Defendant's Motion for Sanctions, the Court would grant Defendant's Motion for
Summary Judgment for the reasons stated herein.

Procedures Manual ("Manual") and University Student Handbook ("Handbook").  The Manual

states that:

> At the end of every academic semester, each student will be given
> the opportunity to give his or her evaluation of a course.  Students
> are asked to evaluate (and may do so anonymously) the
> appropriateness of the reading materials assigned, the adequacy of
> the class coverage in light of the syllabus, the teacher's knowledge
> of the subject matter, the teacher's ability to communicate that
> knowledge effectively, and the spiritual content of the course.
> Student evaluations are reviewed by the instructors only after
> course grades have been assigned.  Student evaluations are also
> reviewed by the Dean.

Regent Univ. Law Sch. Policies & Procedures Manual at 41 (2001).

Plaintiff began her career as a student at Regent University Law School in the fall of

2001.  In late November 2001, Plaintiff completed three course evaluation forms for Civil

Procedure, Property, and Torts.  The evaluation forms encouraged students to write comments

that would be "helpful and appropriate regarding the instructor's strengths and weaknesses in

teaching performance" on the back of the forms.  Although all three courses were taught by

different professors, Plaintiff wrote three very similar accounts of sexual harassment and racial

discrimination.  The accounts can be fairly described as false, offensive, malicious, and

delusional.

Some time after the evaluations were completed, the dean of the law school, Jeffrey

Brauch ("Brauch"), called Plaintiff to a meeting with himself, the Vice President for Student

Affairs, Michael Ash ("Ash"), and the Assistant Dean for Student Affairs, Rebekah Woods

("Woods").  During this meeting, Brauch raised the question of the authorship of the evaluations.

Plaintiff left the meeting upon being confronted about her role in the matter.

On November 30, 2001, Brauch notified Plaintiff by letter that she was suspended from

the law school, and stated that she would no longer be able to attend class or take her final

exams.  Brauch gave Plaintiff one week to contact Woods, or face dismissal from the law school.

On December 4, 2001, Plaintiff met with Woods and Ash.  At this meeting, Plaintiff

admitted that she wrote the evaluations.  As a result of the meeting, Brauch notified Plaintiff that

she would not be admitted back to the school until she had submitted to psychiatric evaluations,

which she would have to release to the law school.

Some time during the spring semester, Woods and Ash met with Plaintiff to suggest that

she withdraw from school for medical reasons until she could receive psychiatric treatment and

an assessment permitting her to return.  Plaintiff did not agree to withdraw, and her suspension

continued.

On April 19, 2002, Plaintiff met with Brauch and Woods.  Brauch informed Plaintiff that

she would be expelled from school if she did not withdraw.  Plaintiff agreed to withdraw, and she

was allowed to take her examinations for her fall classes in May 2002.  Plaintiff believes her

grades suffered as a result of the six-month delay in her examinations.

On November 26, 2004, Plaintiff filed this action for breach of contract.  On May 15,

2006, Defendant filed a Motion for Summary Judgment.  On May 24, 2006, Plaintiff filed a

Memorandum in Opposition to Defendant's Summary Judgment Motion.  On May 25, 2006,

Defendant filed a reply to Plaintiff's opposition, and also filed a Motion for Sanctions.

Additionally, on May 30, 2006,  Defendant filed a supplemental memorandum in support of its

Motion for Summary Judgment.  On June 9, 2006, Plaintiff filed her opposition to Defendant's

Motion for Sanctions.  Defendant filed its reply on June14, 2006.  This matter is now ripe for

adjudication.

## II. LEGAL STANDARDS

### A. Motion for Sanctions

Federal Rule of Civil Procedure 37(b) gives the Court the discretionary power to, *inter alia*, dismiss a complaint for a plaintiff's failure to comply with discovery requests and orders. FED. R. CIV. P. 37(b)(2). *See Societe Internationale v. Rogers*, 357 U.S.197, 207 (1958) ("whether a court has power to dismiss a complaint because of noncompliance with a production order depends exclusively upon Rule 37 . . . [t]here is no need to resort to Rule 41(b), which appears in that part of the Rules concerned with trials and which lacks such specific references to discovery."). The Court's power to impose sanctions under Rule 37 is not "without bounds or limits but one to be exercised discreetly and never when it has been established that failure to comply has been due to inability, and not to wilfulness, bad faith, or any fault of [the non-complying party]." *Wilson v. Volkswagen of America, Inc*, 561 F.2d 494, 503 (4th Cir. 1977) (quotations omitted). Generally, the imposition of sanctions is reviewed under an abuse of discretion standard, however, a court's "range of discretion is more narrow" where the sanctions imposed is that of default judgment. *Id. See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642 (1976). Accordingly, the exercise of such sanction should be confined to "flagrant case[s] in which it is demonstrated that the failure to produce materially affect(s) the substantial rights of the adverse party and is prejudicial to the presentation of his case" *Id*. at 504 (quotations omitted). When granting default judgment, as a form of sanctions, the court "should clearly state its reasons so that meaningful review may be had on appeal." *Id*. at 505 (quoting *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977)).

### B.  Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c)); *Haulbrook v. Michelin North Amer., Inc.*, 252 F.3d 696, 700 (4th Cir. 2001) (citing *McKinney v. Bd. of Trustees*, 955 F.2d 924, 928 (4th Cir. 1992)("[S]ummary judgment should be granted only when it is perfectly clear that no issue of material fact exists, and it is not necessary to inquire further into the facts in order to clarify the operation of the law.")  In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).  To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.

### III.  DISCUSSION

### A.  Motion for Sanctions

Defendant argues for the Court to impose sanctions against Plaintiff in the form of dismissal given that Plaintiff failed to respond to discovery requests on multiple occasions, and has been in direct violation of Court orders.  In response, Plaintiff asserts that upon examination

of the four-factor test required by the United States Court of Appeals for the Fourth Circuit

("Fourth Circuit") in actions for dismissal under Rule 37(b)(2)(C), Defendant cannot show that

dismissal is appropriate in the instant case.

As well established, Rule 37(b)(2)(C) authorizes a court to impose sanctions, including

dismissal of a case with prejudice, if a party fails to comply with a discovery order.  *Hathcock v.*

*Navistar Int'l. Transp. Corp.,* 53 F.3d 36, 20 (4th Cir. 1995).  The Fourth Circuit established four

factors that a court must consider before imposing default judgment as a sanction.  The factors

are (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his

noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of

the evidence he failed to produce; (3) the need for deterrence of the particular sort of

noncompliance; and (4) the effectiveness of less drastic sanctions.  *Mutual Federal Savings &*

*Loan Ass'n v. Richards & Associates, Inc.,* 872 F.2d 88 (4th Cir. 1989); *Wilson v. Volkswagen of*

*Am., Inc.,* 561 F.2d 494, 503-06 (4th Cir. 1977).   Given the Fourth Circuit's admonition that

"court's clearly state its reasons so that meaningful review may be had on appeal."  *Id*. at 505

(quoting *Int'l. Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977)).  The Court will

address each factor in turn.

   *1.  Whether the Noncomplying Party Acted in Bad Faith*

In this case, Plaintiff has repeatedly disregarded the orders of this Court since her filing of

the instant action.  First, the parties were directed by the Court's Order on August 5, 2005 to

meet before a Magistrate Judge to seek resolution of the matter.  However, even after an

extension of more than a month, Plaintiff failed to attend the scheduled mediation.  Plaintiff's

counsel was unable to explain why Plaintiff failed to appear.  At that time, the Plaintiff was

warned that her failure to comply with the Court's orders could lead to sanctions.  However, even after this initial warning, Plaintiff continued to ignore Court orders as evidenced by her failure to timely provide answers to written discovery and Rule 26(a) disclosures.  In fact, on January 31, 2006, Defendant filed a Motion to Compel Plaintiff to respond to the discovery and disclosure requests.  At a hearing on March 16, 2006, before a Magistrate Judge, Plaintiff's counsel attested to the fact that he repeatedly contacted Plaintiff through "several letters and numerous phone calls and e-mails."  (Pls.'s Mem. in Opp'n to Def.'s Mot. for Sanctions at 2).  However despite the attempts, Plaintiff did not make any contact with her own counsel to explain her unresponsiveness or to answer the discovery requests.  Plaintiff's counsel provided the Court with no explanation for Plaintiff's disregard of the Court's order or for her apparent absence from the court during the proceedings.  At that time, the Magistrate Judge criticized Plaintiff for her blatant lack of regard for the Court's procedures and orders, stating that Plaintiff "was clearly out of time and is subject to sanctions by the Court for her failure to abide by the rule governing discovery in civil matters."  (Def.'s Reply Mem. in Supp. of Mot. for Sanctions, Ex. 1).  The Magistrate Judge ordered that Plaintiff "fully" answer the discovery requests before March 27, 2006, and advised Plaintiff that:

> [t]he Court will take under advisement the question of whether any sanctions should be imposed upon plaintiff for her failure to abide by the orders of this Court.  However, plaintiff should not make the assumption that no sanctions will be imposed.  Completion of discovery in timely fashion is the responsibility of each litigant, and plaintiff is certainly not exempt or excused from such responsibility.  Should plaintiff fail to respond to discovery as ordered herein, the matter will be brought to the attention of the District Court immediately for further action.

(*Id.*).  Thus, Plaintiff was placed on notice for a second time that her actions were in direct violation of the Court's orders.  However, Plaintiff failed to take heed.  In fact, Plaintiff's own counsel asserts that despite his instructions, Plaintiff did not forward her responses on time, and that the responses she finally submitted were deficient.  (Pls.'s Mem. in Opp'n to Def.'s Mot. for Sanctions at 3) (advising the Court that Plaintiff did not forward her responses to him until approximately 2:30 p.m. on March 27, 2006, and that the answers were "somewhat flawed").  As a result, on April 3, 2006, Defendant's filed its first motion for sanctions.

Although Plaintiff's Counsel notified Plaintiff that her appearance at this hearing was desired, Plaintiff failed to appear.  Sanctions for failure to answer the discovery requests were not imposed at the hearing, because the Magistrate Judge found that a deposition could be the proper remedy for Defendant's to get the answers they sought.  Thus, Plaintiff was ordered to appear for a deposition, and Plaintiff's counsel was placed on notice that if Plaintiff did not appear willing to respond to questions, dismissal would certainly be proper.  Plaintiff was, again, given an opportunity to be heard in the matter, even after a blatant disregard and an obvious lack of concern as to the seriousness of a hearing on sanctions.  Plaintiff appeared for her deposition, however, Plaintiff refused to answer most of the questions posed to her.  In fact, Plaintiff's own counsel recognizes the inadequate nature of his client's deposition testimony, stating "the deposition transcript, for lack of a better term, is what it is.  Plaintiff's counsel has no definitive explanation for the plaintiff's deposition testimony."  (Pls.'s Mem. in Opp'n to Def.'s Mot. for Sanctions at 3).  Based on the deposition testimony, Defendant's filed a second motion for sanctions, which is the subject of this opinion.

Based on the totality of events, as set forth above, is clear to the Court that Plaintiff's

8

actions were in bad faith.  Plaintiff has been placed on notice on three separate occasions that her actions were in direct violation of discovery rules and the Court's orders.  However, to no avail, Plaintiff continued to disregard the Court's orders without explanation or reason.  In fact, her own counsel attest that he has had problems contacting her, and further attest that the answers to the interrogatories and deposition were deficient and lacking in all regards.

### 2. The Amount of Prejudice Plaintiff's Noncompliance Caused her Adversary

Plaintiff argues that any prejudice that resulted from her failure to properly answer the interrogatories and request for production was cured when Defendant was able to depose her. However, on review of Plaintiff's deposition testimony, the Court cannot find so.

Plaintiff's deposition testimony is overflowing with unresponsive answers and most of her answers are incoherent.  Many of the questions asked are material to Defendant's ability to present evidence at trial and provide a defense.  Her own Counsel concedes that "for lack of a better" term, the deposition transcript "is what it is."  (Pls.'s Mem. in Opp'n to Def.'s Mot. for Sanctions at 3).  The Court finds that Plaintiff's deposition testimony is not sufficient, especially in light of the cautionary warning given to Plaintiff to fully answer the questions, the fact that the answers to her written interrogatories were also lacking, and her history of delay during this ligation.

### 3. The Need for Deterrence of the Particular Sort of Noncompliance

To date, Defendant's have not received sufficient discovery responses to Interrogatories and Requests for Discovery from back in September of 2005.  Plaintiff has continued to impede the discovery process for an extended period of time, and such has become her pattern throughout this entire litigation.  On review of the record and history of this litigation, it is

9

apparent that there have been unnecessary delays in the overall process which were fueled by

Plaintiff's lack of concern with the time constraints of the Court, and the judicial process as a

whole.

   4.   *The Effectiveness of Less Drastic Sanctions*

   On several occasions the Court clearly put Plaintiff on notice that her actions were in

violation of discovery rules and court orders.  However, to no avail, Plaintiff continued to engage

in obstructing the judicial process through her lackadaisical attitude and her evasive conduct.  In

*Choice Hotels Int'l. Inc., v. Goodwin & Boone*, 11 F.3d 469, 472, the Fourth Circuit noted that:

> [r]equiring district courts to provide explicit and clear notice when
> they intend to dismiss the plaintiff's action with prejudice if he
> fails to satisfy its conditions promotes our strong preference that
> cases be decided on their merits.  Such notice of this drastic
> consequence is likely to prompt most plaintiffs to act diligently in
> meeting these conditions, thereby averting prejudicial dismissal.

   In this case, Plaintiff was given notice on three separate occasions that her actions were

subject to sanctions and that the Court would take the matter under advisement.  A hearing on

sanctions was held for which Plaintiff received notice, but failed to appear.  Plaintiff's counsel

could provide no explanation to the Court for her failure.  However, even after Plaintiff's failure

to appear, the Court opted to again take sanctions under advisement for a third time and, instead,

order Plaintiff to appear for a deposition so that Defendant could obtain the information that

Plaintiff's vague and evasive interrogatories lacked.  Although Plaintiff appeared for the

scheduled deposition, her answers were demonstratively inadequate.

   Thus, the record is clear that the Court has given Plaintiff ample opportunity, time and

time again, to comply, however, Plaintiff has failed to do so.  At this juncture, there is no less

drastic sanction that will send the message to Plaintiff that the judicial process does have

boundaries and rules that all litigants must follow.  Accordingly, based on the four factors as set

forth above, Defendant's Motion for Sanctions is **GRANTED**.  As a result, Plaintiff's case is

**DISMISSED** with prejudice.

### B.  Motion for Summary Judgment

Plaintiff contends that Defendant's Manual and Handbook should be considered a

contract between her and the school.  Therefore, Plaintiff argues that Defendant's investigation

and identification of Plaintiff as the author of the student evaluations is a breach of contract.

Among other arguments, Defendant moves for summary judgment on the argument that a valid

contract did not exist between itself and Plaintiff.  First, Defendant argues that the Manual cannot

form the basis of a contract because the University reserved the right to change any statements

about its policies without notice.  As such, Defendant asserts that there is a lack of absolute

mutuality as required for both parties to be bound to an agreement.  Second, Defendant argues

that the Regent University Graduate Catalog ("Catalog") specifically provides that the catalog

does not establish contractual relationships.[2]   In support of both arguments Defendant cites

*Davis v. George Mason Univ.*, 395 F.Supp.2d 331, 337 (E.D.Va. 2005).  The Court finds the

holding in *Davis* compelling.

"In Virginia, in order for there to be a contract there must be an absolute mutuality of

engagement so that each party is bound and has the right to hold the other party to the

[2]  The Court notes Plaintiff's argument that Defendant misquoted the Manual, and that the Manual states "the law school catalog" and not the Regent University Graduate Catalog. However, the Court considers the two to be interchangeable given that the law school, along with its policy and procedures is listed in the Regent University Graduate Catalog .  Moreover, Plaintiff has presented no other evidence to prove that a law school catalog in fact exists.

agreement." *Davis*, 395 F.Supp. 2d at 337.  In *Davis*, the defendant, a former student of George

Mason University ("GMU") filed a claim for breach of contract, *inter alia*, against GMU for

dismissing him from a graduate program.  The *Davis* court dismissed the breach of contract

claim, holding that the catalog was not a contract.  In support of the holding, the court pointed to

the language in the catalog that allowed GMU to make "corrections, changes, or interpretations"

to certain policies and procedures.  The court held that "such ephemeral terms and lack of

absolute mutuality" amounted to "an unenforceable illusory contract because it purports to

promise specified performance, but the performance by GMU, the promissor, is entirely

optional."  *Id*.  Essentially, the *Davis* court took the position that because GMU could change the

"terms" in the catalog as it deemed necessary, they were not bound to the terms of an agreement,

as required for absolute mutuality to exist.  Further, the Court found that express language in the

student guide stating that "[t]he provisions of this Guide . . . do not constitute a contract with the

students to whom they apply" further added to the conclusion that there was not a valid contract.

In this case, the Manual provides that it should be read together with the Catalog and

Handbook for the student to fully understand all of Defendant's policies and practices.  (Def.'s

Mot. for Summ. J., Ex. A).  Accordingly, for a comprehensive picture, the Court must view all of

these documents in totality and not individually.  The Catalog specifically provides the

following: "this catalog does not establish contractual relationships.  The university reserves the

right to alter or change any statement contained herein without prior notice." (Def.'s Mot. for

Summ. J., Ex. 2 at 58).  Thus, like the catalog in *Davis*, this language is such that Defendant does

not bind itself to the statements in the catalog, and therefore lacks the mutuality necessary to

form a contract.  Further, similar to *Davis*, the Catalog expressly states that it does not establish a

contractual relationship between itself and the students.

Although Plaintiff argues that the applicability of the disclaimer is limited to only the Catalog and does not extend to the Manual, the Court does not find so.  As previously stated, the Manual directs the student to the Catalog and Student Handbook for a comprehensive understanding of the policies and procedures.  In fact, the Catalog contains an individual section applicable to the law school, thus it is clear that these documents must be taken as a whole for a complete understanding.  Accordingly, under the reasoning of *Davis*, the Court finds that no contract exists between Defendant and Plaintiff.  Where there is no contract, Plaintiff's claim for breach must fail.  Thus, even if the Court did not dismiss the case under Defendant's Motion for Sanctions, the Court finds proper grounds exist for dismissal under the argument set forth in Defendant's Motion for Summary Judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Sanctions is **GRANTED**, and the case is **DISMISSED** with prejudice.  Accordingly, Defendant's Motion for Summary Judgment is **MOOT**.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**


_____/s/_____
Raymond A. Jackson
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 21,2006

14